# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### HUNTINGTON DIVISION

| | | |
|---|---|---|
| TRAVIS MARK EDMONDS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 3:20-00683 |
| | ) | |
| ROB, Nurse, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before the Court are the following: (1) Defendant Rob's "Motion to Dismiss Complaint and Alternative Motion for Summary Judgment" (Document No. 19), filed on January 4, 2021; and (2) Defendant Diamond's Motion for Summary Judgment (Document No. 27), filed on February 1, 2021. The Court notified Plaintiff pursuant to Roseboro v. Garrison, 528 F.2d 304 (4th Cir. 1975), that Plaintiff had the right to file a response to Defendants Rob and Diamond's Motions and submit Affidavit(s) or statements and/or other legal or factual material supporting his claims as they are challenged by the Defendants in moving to dismiss. (Document Nos. 23 and 30.) On January 12, 2021, Plaintiff filed a Response in Opposition to Defendant Rob's Motion. (Document No. 23.) Defendant Rob filed his Reply on January 19, 2021, and Plaintiff filed his Surreply on February 2, 2021. (Document Nos. 26 and 29.) On March 1, 2021, Plaintiff filed his Responses in Opposition to Defendant Diamond's Motion. (Document No. 31 and 32.) Defendant Diamond filed his Reply on March 5, 2021, and Plaintiff filed his Surreply on March 18, 2021. (Document Nos. 33 and 36.) Having examined the record and considered the applicable law, the undersigned has concluded that Defendant Rob's Motion should be granted and Defendant Diamond's Motion should be granted.

## PROCEDURAL BACKGROUND

On October 15, 2020, Plaintiff, acting *pro se*,[1] filed his Motion to Proceed Without Prepayment of Fees and Complaint claiming entitlement to relief pursuant to Title 42 U.S.C. § 1983. (Document Nos. 1 and 2.) In his Complaint, Plaintiff named the following as Defendants: (1) Rob, Nurse; (2) CO Diamond; (3) CO Wallace; and (4) CO Willey. (Document No. 2.) Plaintiff alleges that on September 15, 2020, at approximately 11:00 a.m., he was "scanned and stripped out for a body search" after he got off work in the kitchen. (Id., p. 3.) Plaintiff alleges that after he was back in his pod, CO Diamond, CO Wallace, and CO Willey took Plaintiff to the shower for another body search. (Id.) Plaintiff alleges that CO Diamond, CO Wallace, and CO Willey stripped Plaintiff to his underwear, beat Plaintiff, and then placed Plaintiff face down and "penetrated [his] anal area looking for contraband." (Id.) Plaintiff alleges he was then "cuffed up" and taken to the "hole" where Nurse Rob took pictures of Plaintiff. (Id.) Plaintiff claims that he informed Nurse Rob that his "anal area was ripped and bleeding, but he refused to see it or let [Plaintiff] go to the hospital for treatment." (Id.) Plaintiff further states that during his disciplinary hearing conducted on September 19, 2020, Plaintiff requested that Hearing Officer Brewer allow Plaintiff to file a Prison Rape Elimination Act ("PREA") complaint. (Id., p. 4.) Plaintiff, however, complains that "no one will let me file a PREA." (Id.) Finally, Plaintiff alleges that he is being held in the "hole" illegally because Plaintiff was not "served a write up within 72 hours of being in the hole." (Id.) Plaintiff requests monetary damages and "disciplinary and sanctions against the Defendants."[2] (Id., p. 4.)

---

[1]  Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer and therefore, they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

[2] The record indicates that disciplinary proceedings were the result of two baggies containing contraband being discovered on Plaintiff's body. (Document No. 28, pp. 1 – 2.)

By Order entered on October 22, 2020, United States Magistrate Judge Cheryl A. Eifert granted Plaintiff's Motion to Proceed Without Prepayment of Fees, directed the Clerk to issue a summons for each named defendant, and directed the United States Marshals Service to serve the Summons and a copy of Plaintiff's Complaints upon each named defendant. (Document No. 4.) On January 4, 2021, Defendant Rob filed his "Motion to Dismiss Complaint and Alternative Motion for Summary Judgment" and Memorandum in Support. (Document Nos. 19 and 20.) Defendant Rob argues that Plaintiff's claims should be dismissed based on the following: (1) Plaintiff failed to exhaust his administrative remedies (Document No. 20, pp. 3 – 6.); and (2) Plaintiff's claims do not meet the legal threshold for a viable Eighth Amendment claim" (Id., pp. 6 – 9.). As an Exhibit, Defendant Rob attaches a copy of Plaintiff's medical records. (Document No. 19-1.)

On January 5, 2021, the above civil action was transferred from Judge Eifert to the undersigned for total pretrial management and submission of proposed findings of fact and recommendations for disposition. (Document Nos. 21 and 22.) Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on January 6, 2021, advising him of the right to file a response to the Defendant Rob's Motion. (Document No. 23.) On January 12, 2021, Plaintiff filed his Response in Opposition. (Document No. 24.) On January 19, 2021, Defendant Rob filed his Reply. (Document No. 26.) On February 2, 2021, Plaintiff filed his Surreply. (Document No. 29.)

On February 1, 2021, Defendant Diamond filed his Motion for Summary Judgment and Memorandum in Support. (Document Nos. 27 and 28.) Defendant Diamond argues that Plaintiff's claims should be dismissed based on the following: (1) To the extent Plaintiff is suing Defendant Diamond in his official capacity, Plaintiff's claims are barred by the Eleventh Amendment

(Document No. 28, pp. 3 – 4.); and (2) Plaintiff failed to exhaust his administrative remedies (Id., pp. 4 – 7.). As Exhibits, Defendant Diamond attaches the following: (1) A copy of the Inmate Grievance Procedure, Policy Directive 335.00 (Document No. 27-1); (2) A copy of Plaintiff's deposition (Document No. 27-2.); (3) A copy of Plaintiff' "Inmate Grievance Form" dated October 3, 2020 (Document No. 27-3, p. 1.); (4) A copy of Plaintiff' "Inmate Grievance Form" dated October 15, 2020 (Id., p. 2.); (5) A copy of Plaintiff' "Inmate Grievance Form" dated October 21, 2020 (Id., p. 3.); (6) ) A copy of Plaintiff' "Inmate Grievance Form" dated November 26, 2020 (Id., p. 4.); (7) A copy of Plaintiff' "Inmate Grievance Form" dated November 27, 2020 (Id., pp. 5 - 6.).

Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on February 3, 2021, advising him of the right to file a response to the Defendant Diamond's Motion. (Document No. 30.) On March 1, 2021, Plaintiff filed his Responses in Opposition. (Document Nos. 31 and 32.) On March 5, 2021, Defendant Diamond filed his Reply. (Document No. 33.) On March 18, 2021, Plaintiff filed his Surreply. (Document No. 36.)

## THE STANDARD

### Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009)(quoting Bell Atlantic Corporation v. Twombly, 550 U.S. 554, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it

has not 'show[n]' – 'that the pleader is entitled to relief." Id. at 556 U.S. at 679, 129 S.Ct. at 1950. The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Twombly, 550 U.S. at 555, 127 S.Ct. at 1959. Although factual allegations must be accepted as true for purposes of a motion to dismiss, this principle does not apply to legal conclusions. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

This Court is required to liberally construe *pro se* documents, holding them to a less stringent standard than those drafted by attorneys. Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); Loe v. Armistead, 582 F.2d 1291, 1295 (1978). Liberal construction, however, "does not require courts to construct arguments or theories for a *pro se* plaintiff because this would place a court in the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." Miller v. Jack, 2007 WL 2050409, at * 3 (N.D.W.Va. 2007)(citing Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir.1978)). Further, liberal construction does not require the "courts to conjure up questions never squarely presented to them." Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985). In other words, a court may not construct legal argument for a plaintiff. Small v. Endicott, 998 F.2d 411 (7th Cir.1993). Finally, the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a claim currently cognizable in a federal district court. Weller v. Department of Social Servs., 901 F.2d 387 (4th Cir.1990)). Where a *pro se* Complaint can be remedied by an amendment, however, the District Court may not dismiss the Complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992).

### Summary Judgment

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Once the moving party demonstrates the lack of evidence to support the non-moving party's claims, the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 - 87, 106 S.Ct.1348, 89 L.Ed.2d 538 (1986). All inferences must be drawn from the underlying facts in the light most favorable to the non-moving party. Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356. Summary judgment is required when a party fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual issues proving other elements of the claim. Celotex, 477 U.S. at 322-23, 106 S.Ct. at 2552-53. Generally speaking, therefore, summary judgment will be granted unless a reasonable jury could return a verdict for the non-moving party on the evidence presented. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If no facts or inferences which can be drawn from the circumstances will support Plaintiff's claims, summary judgment is appropriate.

### ANALYSIS

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a)(1996), requires that inmates exhaust available administrative remedies prior to filing civil actions though the administrative process may not afford them the relief they might obtain through civil proceedings.[3] Woodford v.

---

[3] 42 U.S.C. § 1997e(a) provides as follows:
> No action shall be brought with respect to prison conditions under section 1983 of this title or any other federal law, by a prisoner confined in any jail, prison, or other correction facility until such administrative remedies as are available are exhausted.

Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2382-83, 165 L.Ed.2d 368 (2006); Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002)(The Prison Litigation Reform Act's exhaustion requirement applies to all inmate suits about prison life whether they involve general circumstances or particular episodes and whether they allege excessive force or some other wrong.); Booth v. Churner, 532 U.S. 731, 121 S.Ct. 1819, 1820,149 L.Ed.2d 958 (2001)("Under 42 U.S.C. § 1997e(a), an inmate seeking only money damages must complete any prison administrative process capable of addressing the inmate's complaint and providing some form of relief, even if the process does not make specific provision for monetary relief."). Exhaustion of administrative remedies is also required when injunctive relief is requested. Goist v. U.S. Bureau of Prisons, 2002 WL 32079467, *4, fn.1 (D.S.C. Sep 25, 2002), aff'd, 54 Fed.Appx. 159 (4th Cir. 2003), cert. denied, 538 U.S. 1047, 123 S.Ct. 2111, 155 L.Ed.2d 1088 (2003). "[A] court may not excuse a failure to exhaust" because the PLRA's mandatory exhaustion scheme "foreclose[es] judicial discretion." Ross v. Blake, ___ U.S. ___, 136 S.Ct. 1850, 1856-57, 195 L.Ed.2d 117 (2016)("[A] court may not excuse a failure to exhaust, even to take [special circumstances] into account."). But the plain language of the statute requires that only "available" administrative remedies be exhausted. Id. at 1855("A prisoner need not exhaust remedies if they are not 'available.'") In Ross v. Blake, the Supreme Court set forth three scenarios where the administrative process is considered "unavailable": (1) The administrative process "operates as a simple dead end -- with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) The administrative process is so opaque that no ordinary prisoner can discern or navigate through the process; and (3) The "administrator thwart inmates from taking advantage of a grievance process through machination, misrepresentation or intimidation." Ross, 136 S.Ct. at 1859-60; also see Dale v. Lappin, 376 F.3d 652, 656 (7th Cir. 2004); Mitchell v. Horn, 318 F.3d

7

523, 529 (3d Cir. 2003)(inmate lacked available administrative remedies for exhaustion purposes where inmate was unable to file a grievance because prison officials refused to provide him with the necessary grievance forms); <u>Miller v. Norris</u>, 247 F.3d 736, 740 (8th Cir. 2001)(allegations that prison officials failed to respond to his written requests for grievance forms were sufficient to raise an inference that inmate had exhausted his available administrative remedies.)

Similar to the PLRA, the West Virginia Prisoner Litigation Reform Act ("WVPLRA") requires an inmate to exhaust the agency's procedures before filing a civil action regarding an ordinary administrative remedy. W.Va. Code § 25-1A-2(c). An "ordinary administrative remedy" is defined as "a formal administrative process by which an inmate submits a grievance seeking redress and presenting concerns regarding any general or particular aspect of prison life which does not involve violence . . . An ordinary administrative remedy includes, but is not limited to, . . . staff treatment or some other alleged wrong." W. Va. Code § 25-1A-2(a). Exhaustion of an ordinary administrative remedy is satisfied upon a showing of the following:

> An ordinary administrative remedy is considered exhausted when the inmate's grievance complies with duly promulgated rules and regulations regarding inmate grievance procedures, has been accepted, fully appealed and has received a final decision from the Commissioner of Corrections or the Commissioner's designee, or the Executive Director the Regional Jail Authority, or the Director's designee.

If an inmate exhausts administrative remedies with respect to some, but not all, of the claims he raises in a Section 1983 or <u>Bivens</u> action, the Court must dismiss the unexhausted claims and proceed with the exhausted ones. See <u>Jones v. Bock</u>, 549 U.S. 199, 127 S.Ct. 910, 913, 166 L.Ed.2d 798 (2007)("The PLRA does not require dismissal of the entire complaint when a prisoner has failed to exhaust some, but not all, of the claims included in the complaint. * * * If a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad.") It appears to be the majority view as well that exhausting administrative remedies after a Complaint

is filed will not save a case from dismissal. See Neal v. Goord, 267 F.3d 116, 121-22 (2d Cir. 2001)(*overruled on other grounds*), a Section 1983 action, citing numerous cases. The rationale is pragmatic. As the Court stated in Neal, allowing prisoner suits to proceed, so long as the inmate eventually fulfills the exhaustion requirement, undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal court. Moreover, if during the pendency of a suit, the administrative process were to produce results benefitting plaintiff, the federal court would have wasted its resources adjudicating claims that could have been resolved within the prison grievance system at the outset. Neal, 267 F.3d at 123. In Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999), the Court stated: "The plain language of the statute [§ 1997e(a)] makes exhaustion a precondition to filing an action in federal Court.. . .The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit." Thus, the PLRA requires that available administrative remedies must be exhausted before the filing of a suit in Federal Court. It is further clear that the PLRA does not require that an inmate allege or demonstrate that he has exhausted his administrative remedies. See Jones v. Bock, supra; Anderson v. XYZ Correctional Health Services, 407 F.3d 674, 677 (4th Cir. 2005), *abrogated on other grounds by* Custis v. Davis, 851 F.3d 358 (4th Cir. 2017). Failure to exhaust administrative remedies is an affirmative defense. Prison officials have the burden of proving that the inmate had available remedies which he did not exhaust. Jones v. Bock, supra, 549 U.S. at 216, 127 S.Ct. at 921(Failure to exhaust is an affirmative defense that a defendant must generally plead and prove); also see Dale v. Lappin, 376 F.3d 652, 655 (7th Cir. 2004)("Although exhaustion of administrative remedies is a precondition to a federal prisoner filing a Bivens suit, [citations omitted] failure to exhaust is an affirmative defense that the defendants have the burden of pleading and proving." (Citations omitted)) The Court is not precluded, however, from considering at the outset whether

an inmate has exhausted administrative remedies. "A court may sua sponte dismiss a complaint when the alleged facts in the complaint, taken as true, prove that the inmate failed to exhaust his administrative remedies." Custis v. Davis, 851 F.3d. 358, 361 (4ᵗʰ Cir. 2017); also see Banks v. Marquez, 694 Fed. Appx. 159 (4ᵗʰ Cir. 2017)(finding no error in the district court's decision to sua sponte dismiss petitioner's petition where petitioner explicitly admitted in his petition that he failed to exhaust his administrative remedies). Although failure to exhaust available administrative remedies is an affirmative defense, it is a threshold issue that must be resolved before reaching the merits of the underlying claims for relief. Jones v. Bock, supra, 549 U.S. at 216, 127 S.Ct. at 921; Moore v. Bennette, 517 F.3d 717, 725 (4ᵗʰ Cir. 2008). Once the defendant has made a threshold showing of failure to exhaust, the burden of showing that the administrative remedies were unavailable falls to plaintiff. See Washington v. Rounds, 223 F.Supp.3d 452, 459 (D.Md. 2016)(citing Graham v. Gentry, 413 Fed.Appx. 660, 663 (4ᵗʰ Cir. 2011)). Whether an administrative remedy has been exhausted for purposes of the PLRA "is a question of law to be determined by the judge." Creel v. Hudson, 2017 WL 4004579, at * 3 (S.D.W.Va. 2017)(citing Drippe v. Tobelinski, 604 F.3d 778, 782 (3ʳᵈ Cir. 2010)); Lee v. Willey, 789 F.3d 673, 678 (6ᵗʰ Cir. 2015)(finding disputed questions of fact are resolved by the Court); also see Woodhouse v. Duncan, 741 Fed.Appx. 177, 178 (4ᵗʰ Cir. 2018)(citation omitted)("Judges may resolve factual disputes relevant to the exhaustion issue without the participation of a jury.") If a plaintiff fails to exhaust his or her administrative remedies under the PLRA or WVPLRA, then the defendant is entitled to judgment as a matter of law. See Legg v. Adkins, 2017 WL 72604, * 2 (S.D.W.Va. Feb. 23, 2017).

West Virginia Division of Corrections Policy Directive 335.00, which was in effect at the time of the incident described in Plaintiff's Complaints, sets forth the administrative remedy

process. (Document No. 27-1.) An inmate initiates the administrative process by filing a grievance.[4] Specifically, an inmate must first file a grievance utilizing a grievance form "within fifteen (15) days of any occurrence that would cause him/her to file a grievance." (Id.) Only one issue or complaint may be grieved per form, and the inmate must submit it to his/her Unit Manager. (Id.) The Unit Manager is required to ensure that an answer to the grievance is provided to the inmate within five days. (Id.) Next, the inmate may appeal the Unit Manager's response "to the Warden/Administrator within five (5) days from delivery of the response to his/her grievance" using the same form submitted to the Unit Manager. (Id.) "The Warden/Administrator shall respond to the appeal . . . within five (5) days." (Id.) Finally, the inmate may appeal the Warden's response "to the Commissioner of the Division of Corrections within five (5) days after he/she receives the Warden/Administrator's response . . . using the same form . . ." (Id.) The Commissioner "shall respond to the appeal, in writing, within fifteen (15) days." (Id.) The administrative process is exhausted when the Commissioner responds to the inmate's final appeal. (Id.) The entire process takes about 60 days to complete. (Id.) "If a grievance has not been properly submitted through any level by an inmate, it shall be rejected. A rejected grievance does not exhaust the grievance process or that step of the process." (Id.)

Both Defendants Rob and Diamond argue in their Motions that Plaintiff's Complaint should be dismissed based upon Plaintiff's failure to exhaust his administrative remedies. (Document Nos. 19 – 20 and 27 - 28.) Defendant Rob argues that Plaintiff acknowledges in his Complaint that he filed the above action prior to exhausting his administrative remedies. (Document No. 20, pp. 5 – 6.) Defendant Rob notes that in his Complaint, Plaintiff indicates that

---

[4] A "grievance" is defined to "mean the formal process by which an inmate seeks redress over any matter concerning prison life, whether it involves general circumstances or particular episodes." W. Va. Code St. R. § 90-9-4.1.

he filed a grievance on October 4, 2020, and the result was "Don't know yet." (Id.) Defendant Rob states that Plaintiff filed his Complaint with this Court on October 15, 2020, without getting a response to his grievance. (Id.) Defendant Diamond argues that even though Plaintiff states in his Complaint that Plaintiff filed a grievance on October 4, 2020, such is incorrect. (Document No. 28, pp. 7 – 8.) Defendant Diamond contends that even assuming Plaintiff filed a grievance on October 4, 2020, such would have been untimely as it was filed more than 15 days after the occurrence (September 15, 2020). (Id.) Defendant Diamond further argues that Plaintiff acknowledged during his deposition that Plaintiff did not file a grievance concerning the above claims until November 26, 2020. (Id.) Defendant Diamond attaches a copy of all grievances filed by Plaintiff on or after September 15, 2020. (Id.) Defendant Diamond argues that the grievances filed by Plaintiff are unrelated to the subject of his Complaint. (Id.) Specifically, Defendant Diamond asserts "[t]he alleged actions of the named defendants were not mentioned, and the named defendants are not the focus of the grievances." (Id.) As Exhibits, Defendant Diamond attaches the following: (1) A copy of the Inmate Grievance Procedure, Policy Directive 335.00 (Document No. 27-1); (2) A copy of Plaintiff's deposition (Document No. 27-2.); (3) A copy of Plaintiff' "Inmate Grievance Form" dated October 3, 2020 (Document No. 27-3, p. 1.); (4) A copy of Plaintiff' "Inmate Grievance Form" dated October 15, 2020 (Id., p. 2.); (5) A copy of Plaintiff' "Inmate Grievance Form" dated October 21, 2020 (Id., p. 3.); (6) ) A copy of Plaintiff' "Inmate Grievance Form" dated November 26, 2020 (Id., p. 4.); (7) A copy of Plaintiff' "Inmate Grievance Form" dated November 27, 2020 (Id., pp. 5 - 6.).

In Response to Defendant Rob's Motion, Plaintiff acknowledges that the failed to fully exhaust his administrative remedies as mandated by the PLRA. (Document No. 24, pp. 1 – 2.) Plaintiff, however, explains that he "started the grievance process on 10-3-20 over another issue,

I went through the process, it went all the way to the Commissioner, [and] still has not been answered." (Id.) Plaintiff then complains that he filed another grievance on November 26, 2020, and when he did not get a response, he filed a second grievance on November 27, 2020. (Id.) Plaintiff complains that both grievances were rejected as duplicate requests. (Id.) Plaintiff argues that he did not get a reply to his grievance within 72 hours per policy. (Id.) Finally, Plaintiff states that he "does in fact understand due process, so [he has] corrected [his] wrong and filed a grievance on 1-8-21." (Id.) As Exhibits, Plaintiff attaches the following: (1) A copy of Plaintiff' "Inmate Grievance Form" dated October 3, 2020 (Id., p. 3.); (2) A copy of Plaintiff' "Inmate Grievance Form" dated November 26, 2020 (Id., p. 4.), and (3) A copy of Plaintiff' "Inmate Grievance Form" dated November 27, 2020 (Id., p. 5.).

In Response to Defendant Diamond's Motion, Plaintiff argues he fully exhausted his administrative remedies. (Document Nos. 31 and 32.) Plaintiff contends that he must only exhaust available administrative remedies. (Id.) Plaintiff contends that only the January 2013 "Handbook of Inmate Rules and Procedures" was available to him, and he did not have access to the 2020 "Handbook of Inmate Rules and Procedures." (Id.) Citing pages 19 through 21 of the January 2013 "Handbook of Inmate Rules and Procedures" and pages 8 – 9 of Policy Directive 335.00, Plaintiff argues that he fully exhausted his administrative remedies. (Id.) Plaintiff claims that he exhausted his sexual assault claim when he told Officer Brewer during his inmate disciplinary hearing that he wanted to file a PREA. (Id.) Plaintiff, therefore, contends that he has fully exhausted his administrative remedies. (Id.)

In Reply, Defendant Rob continues to argue that Plaintiff's Complaint should be dismissed for failure to exhaust. (Document No. 26, pp. 1 – 2.) Defendant Rob notes that Plaintiff acknowledges that he failed to exhaust his administrative remedy prior to filing the above action.

(Id.) In Reply, Defendant Diamond argues that "[a]s shown in both Exhibits of the Plaintiff and Defendant, Plaintiff was versed in the use of the grievance procedure, and specifically Policy Directive 335." (Document No. 33, p. 2.) Defendant Diamond states that "Plaintiff has no excuse for not complying with the grievance mandates." (Id.) Defendant Diamond notes that Plaintiff made no attempt to file a grievance concerning Defendant Diamond's alleged use of excessive force. (Id.) To the extent Plaintiff is asserting a sexual abuse claim, Defendant Diamond argues that Plaintiff also is not excused from complying with the grievance procedure. (Id.) Defendant Diamond notes that Plaintiff relies upon Policy Directive 335.00, Section VII, which provides that an inmate is "responsible for personally pursuing any subsequent steps in the grievance process through exhaustion." (Id., pp. 2 – 3.) Defendant Diamond contends that Plaintiff failed to do so. (Id.)

In his Surreply to Defendant Rob's Reply,[5] Plaintiff again acknowledges that he failed to exhaust administrative remedies. (Document No. 29, p. 2 – 3.) Plaintiff, however, now states that he has been held in segregation since the complained of incident and he did not have access to the "Inmate Handbook or law library to understand the process [he had] to go through to exhaust all remedies as mandated by the [PLRA]." (Id.) Thus, Plaintiff states that he should not be expected to exhaust his administrative remedies that he "knows nothing about because I don't have proper access to rule and polices established to cut down on unfounded civil complaints." (Id.)

---

[5] Local Rule of Civil Procedure 7.1(a)(7) provides that "[s]urreply memoranda shall not be filed except by leave of court." See also Johnson v. Ford Motor Co., 2005 WL 2353469 (S.D.W.Va. Sept. 26, 2005)(stating that the "motion to strike is granted because plaintiff's surreply is not permitted by either the Federal or Local Rules of Civil Procedure"), vacated on other grounds by, 2006 WL 8460260 (S.D.W.Va. Jan. 17, 2006). Plaintiff has not properly requested leave of the Court to file his surreply. Although no new arguments were raised in the Defendants' Replies, the Court is disinclined to strike Plaintiff's surreply from consideration in view of the less stringent standard applicable in this case by virtue of Plaintiff's pro se status.

In his Surreply to Defendant Diamond's Reply, Plaintiff argues that he was not required the file a grievance regarding his excessive force claim. (Document No. 36, p. 2.) Plaintiff contends that "Policy Directive 4.30 for PREA under VI reporting states that a PREA grievance, the Plaintiff does not have to put any details of the incident on the grievance if it involves a PREA." (Id.) Plaintiff contends that "the excessive force is details of the sexual assault incident." (Id.)

Based upon a review of the record, the undersigned finds that Defendants Rob and Diamond have met their burden proving that Plaintiff failed to exhaust his administrative remedies concerning his Eighth Amendment claims as asserted in his Complaint. Specifically, Plaintiff appears to allege that Defendant Rob acted with deliberate indifference to Plaintiff's alleged need for medical care. Further, Plaintiff appears to allege that Defendant Diamond subjected him to excessive force and sexual assault while searching Plaintiff for contraband. The record is completely void of any evidence that Plaintiff filed any timely grievances concerning his Eighth Amendment claims. (Document No. 27-3.) Concerning his claim against Defendant Rob, Plaintiff concedes that he did not fully exhaust his administrative remedies prior to filing his Complaint. (Document No. 24, p. 2.) Plaintiff, however, argues that he has "corrected [his] wrong and filed a grievance on 1-8-21." (Id.) An inmate must fully exhaust his or her available administrative remedies *prior* to filing action. It is well established that exhausting administrative remedies *after* a Complaint is filed will not save a case from dismissal. See Neal v. Goord, 267 F.3d 116, 121-22 (2d Cir. 2001)(*overruled on other grounds*), a Section 1983 action, citing numerous cases. As the Court stated in Neal, allowing prisoner suits to proceed, so long as the inmate eventually fulfills the exhaustion requirement, undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal court. Moreover, if during the pendency of a suit, the administrative process was to produce results benefitting plaintiff, the federal court would have

15

wasted its resources adjudicating claims that could have been resolved within the prison grievance system at the outset. Neal, 267 F.3d at 123. In Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999), the Court stated: "The plain language of the statute [§ 1997e(a)] makes exhaustion a precondition to filing an action in federal Court.. . .The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit." Thus, the PLRA requires that available administrative remedies must be exhausted *before* the filing of a suit in Federal Court. Plaintiff's plan to now exhaust his administrative remedies does not save his above action from being dismissed because he did not exhaust his remedies *prior* to filing the above action.

Next, Plaintiff appears to argue that he should be excused from exhaustion. First, Plaintiff contends he should be excused from exhaustion due to his lack of knowledge concerning the PLRA and the grievance process. Plaintiff, however, presents contradictory arguments concerning his understanding and access to the grievance process. Although Plaintiff argues that his placement in segregation since the date of the underlying incident has restricted his understanding and access to the grievance process, Plaintiff acknowledges that he filed several grievances concerning other issues. (Document No. 24, pp. 1 – 2.) The underlying incident occurred on September 15, 2020, and Plaintiff filed "Inmate Grievance Forms" on October 3, 2020, October 15, 2020, October 21, 2020, November 26, 2020, and November 27, 2020. (Document No. 27-3.) See Ferguson v. Clarke, 2016 WL 398852, * 6 (W.D.Va. Jan. 6, 2016)(inmate's allegation that the administrative process was unavailable was belied by evidence that inmate submitted other grievances within the same period); Al Mujahidin v. Harouff, 2013 WL 4500446, * 7 (D.S.C. Aug. 21, 2013)(finding that inmate could not avoid summary judgment by simply asserting an unsupported allegation that his grievances were not processed or destroyed, in light of documentary evidence showing that other grievances were processed). Plaintiff further indicates that he did not understand the grievance

16

process because Plaintiff only had access to the January 2013 "Handbook of Inmate Rules and Procedures." The foregoing, however, is belied by the record. Again, the record reveals that Plaintiff used the correct "Inmate Grievance Form" when filing his grievances. (Document No. 27-1, p. 12 and Document No. 27-3.) The "Inmate Grievance Form" contains a section for each step of the grievance process, thereby notifying an inmate of the next step. (Id.) The record further reveals, and Plaintiff confirms, that Plaintiff correctly proceeded all the way through the grievance process by filing an appeal to the Commissioner concerning an unrelated claim.[6] (Document No. 24, pp. 1 – 2 and Document No. 27-3, p. 1.) Finally, "a prisoner's claim that the grievance system was unavailable to him because he lacked full knowledge of the specifics of the grievance process does not excuse or waive a failure to exhaust administrative remedies." Graham v. County of Gloucester, 668 F.Supp.2d 734, 741 (E.D.Va. 2009)(citing authority from the Third, Sixth, Seventh, Eighth, and Tenth Circuits), aff'd, 413 Fed.Appx. 660 (4th Cir. 2011); also see Gonzalez v. Crawford, 419 Fed.Appx. 522, 523 (5th Cir. 2011)(An inmate's "alleged ignorance of the exhaustion requirement, or the fact that he might have misconstrued the language in the handbook, does not excuse his failure to exhaust."); Napier v. Laurel County, 636 F.3d 218, 221-22 (6th Cir. 2011)(rejecting plaintiff's argument that "administrative remedies were not available to him" because administrators "failed to explain its grievance policy or the PLRA to him"); Twitty v. McCoskey, 226 Fed.Appx. 594, 596 (7th Cir. 2007)("A prisoner's lack of awareness of a grievance

---

[6] This grievance involved Plaintiff's claim that he failed to receive a copy of his incident report prior to his disciplinary hearing conducted by Officer Brewer. Although the record reveals Plaintiff filed an appeal with the Commissioner, such was dated October 15, 2020. Plaintiff also filed his instant Complaint on October 15, 2020. This Plaintiff filed his Complaint prior to completing the grievance process because the Commissioner had 15 days to respond to Plaintiff's appeal. Only if an inmate does not receive a response within the time allotted for reply, including any properly noticed extension, may the inmate consider the absence of a response to be a denial at that level.

17

procedure . . . does not excuse compliance."); Russell v. Butcher, 2021 WL 1618458, * 5 (S.D.Va. April 26, 2021)(J. Goodwin)(finding that an inmate's "lack of knowledge of grievance procedures does not equate to unavailability"); State v. South Carolina Dept. of Corrections, 2019 WL 3773867, * 6 (D.S.C. Aug. 9, 2019)("Ignorance of the grievance process does not excuse [plaintiff's] failure to exhaust his administrative remedies."); Persinger v. Northern Regional Jail, 2015 WL 4645665 (N.D.W.Va. Aug. 5, 2015)("Lack of knowledge of the grievance process does not excuse compliance with the requirement that a prisoner exhaust his administrative remedies."); Adams v. Southwest Virginia Regional Jail, 2014 WL 3828392, * 3 (W.D.Va. Aug. 4, 2014)(finding that plaintiff's contention that his failure to exhaust should be excused based on his ignorance about the grievance process fails); Goodwin v. Beasley, 2011 WL 835937, * 3 (M.D.N.C. March 3, 2011)("Courts have squarely rejected prisoners' attempts to bypass the exhaustion requirements by merely arguing lack of knowledge about the grievance process."); Smith v. Boyd, 2008 WL 2763841, * 1 (D.S.C. July 11, 2008)("This court cannot waive the exhaustion requirement, which was specifically mandated by Congress, based on Plaintiff's ignorance of the requirement or any perceived futility or inadequacy with the administrative grievance process.").

Finally, Plaintiff argues he did fully exhaust his excessive force and sexual abuse claims. Citing Section 8 of the January 2013 "Handbook of Inmate Rules and Procedures," Plaintiff notes that his sexual abuse claim constituted a "special problem which required special procedures." (Document No. 31, pp. 2 - 3, 7 - 8.) Citing both Section 8 of the January 2013 "Handbook of Inmate Rules and Procedures" and Section VII of the Policy Directive 335.00, Plaintiff alleges he exhausted his sexual abuse and excessive force claims by requesting "a PREA be filed" during his disciplinary hearing. Even assuming Plaintiff could rely on the January 2013 "Handbook of Inmate

Rules and Procedures," Plaintiff's claim that requesting the filing of a PREA complaint exhausted his administrative remedies is without merit.[7] Plaintiff's request for the filing of a PREA complaint in no way fully exhausted Plaintiff's administrative remedies or excused him from exhausting his administrative remedies. "PREA is a federal law designed to reduce incidents of sexual misconduct in correctional facilities by using federal funding and educational initiatives." Worley v. Ewing, 2021 WL 951704, * 4 (S.D.W.Va. March 12, 2021)(J. Goodwin). Specifically, the PREA requires correctional agencies "to enhance education, investigation, protection, prevention, and prosecution of sexual offenses." Id. The PREA, however, does "not create any private right of action for prisoners to sue correctional staff for alleged sexual misconduct." Id.; also see Williams v. Wetzel, 827 Fed.Appx. 158, 162 (3rd Cir. 2020)(finding plaintiff had no private right of action under the PREA); Bowens v. Wetsel, 674 Fed.Appx. 133, 137 (3rd Cir. 2017)(finding that a plaintiff "may not attempt to enforce statutes or policies that do not themselves create a private right of action by bootstrapping such standards into a constitutional deliberate indifference claim); Krieg v. Steele, 599 Fed.Appx. 231, 232-33 (5th Cir. 2015)(dismissing plaintiff's PREA claim as frivolous because the PREA does not establish a private cause of action); Williams v. Dovey, 2016 WL 810707, * 7

---

[7] Section 8 merely provides as follows (Document No. 31, pp. 7 – 8):

Any inmate or group of inmates may be subject to special problems which require special procedures. Staff and inmates shall be guided by the following procedures in dealing with special problems:

1) Inmate threats or assaults: If an inmate is threatened or assaulted, the incident should be reported to the staff member at the earliest possible time. Such report may be made orally or in writing. After a report is made and verified, the threatened inmate has a right to be separated from the person who has threatened or assaulted them. The person or persons who have threatened or assaulted him/her will be subject to disciplinary procedure and/or prosecution in courts.

2) Protective custody: any inmate, who believes themselves to be in danger from other inmates, may request placement in protective custody. All such requests shall be writing. If the danger is substantiated, the inmate shall be placed in protective custody.

(D.Md. March 2, 2016)("Nothing in the PREA suggest Congress intended to create a private right of action for inmates to sue prison officials for noncompliance with the Act."); <u>Chapman v. Willis</u>, 2013 WL 2322947, * 4 (W.D.Va. May 28, 2013)(finding that there is no basis in law for a private cause of action under Section 1983 to enforce a PREA violation); <u>Law v. Whitson</u>, 2009 WL 509564, * 4 (E.D. Cal. Dec. 15, 2009)("The [PREA] in itself contains no private right of action, nor does it create a right enforceable under Section 1983."). Section VII of Policy Directive 335.00 provides that "[w]henever a staff member is notified either verbally or in writing of an allegation that an inmate has been sexually abused, . . . the staff member shall transmit a copy of this information to the Superintendent, who shall forthwith transmit the same to the Director of the Corrections Investigation Division and to the Inmate's Unit Manager/Director of Inmate Services." (Document No. 27-1, pp. 8 - 9.) The Unit Manager/Director of Inmate Services must consider this notification as a grievance submitted on behalf of the inmate and ensure that any "verbal reports are reduced to writing." (<u>Id.</u>) The grievance is then processed under the standard grievance procedures as set forth above, and the inmate is personally responsible for pursuing any subsequent steps in the grievance process through exhaustion. (<u>Id.</u>) Even assuming that Plaintiff's request for the filing of a PREA complaint resulted in the filing of an initial grievance, Plaintiff took no further action.[8] To the extent Plaintiff did not get a response to his initial grievance, Plaintiff should have considered such as a denial and proceeded to the next step in the grievance process. Thus, Plaintiff's mere request for the filing of a PREA complaint did not result in fully exhaustion or excuse Plaintiff from exhausting his administrative remedies. Finally, the WVPLRA clearly requires an inmate to exhaust his or her administrative remedies prior to initiating a civil action for

---

[8] Even if an inmate decides not to pursue a grievance, Policy Directive 335.00 provides that "[t]he Unit Manager/Director of Inmate Services shall remain responsible for ensuring the information was reported to the Corrections Investigation Division."

alleged sexual or physical assault. Specifically, the WVPLRA provides that "no inmate shall be prevented from . . . bringing a civil or criminal action alleging violence, sexual assault[,] or sexual abuse, *after exhaustion of administrative remedies*." W. Va. Code § 25-1A-2a(i) (emphasis added). Thus, exhaustion is required for all inmates. See <u>Miller v. Rubenstein</u>, 2018 WL 736044, * 6 – 7 (S.D.W.Va. Feb. 6, 2018)(J. Johnston); <u>Baker v. Hammons</u>, 2016 WL 538481, * 2 (S.D.W.Va. Feb. 9, 2016)(J. Goodwin). The undersigned, therefore, respectfully recommends that Defendant Rob's and Diamond's Motions be granted and Plaintiff's Complaint be dismissed in view of his failure to exhaust his administrative remedies pursuant to the PLRA and the WVPLRA. The undersigned finds it unnecessary to consider the other reasons that Defendants have submitted for dismissal of Plaintiff's claim.

## PROPOSAL AND RECOMMENDATION

Based upon the foregoing, it is therefore respectfully **PROPOSED** that the District Court confirm and accept the foregoing factual findings and legal conclusions and **RECOMMENDED** that the District Court **GRANT** Defendant Rob's "Motion to Dismiss Complaint and Alternative Motion for Summary Judgment" (Document No. 19), **GRANT** Defendant Diamond's Motion for Summary Judgment (Document No. 27), and **REFER** the matter back to the undersigned for further proceedings concerning Defendants Wallace and Willey.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Robert C. Chambers. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen (14) days (filing of objections) and three (3) days (if received by mail) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written

objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Chambers and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Plaintiff, who is acting *pro se*, and transmit a copy to counsel of record.

Date: June 24, 2021.

Omar J. Aboulhosn
United States Magistrate Judge